UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LAAUTUILEVANU P. TUE,<br><br>              Plaintiff,<br><br>     vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL SECURITY;<br><br>              Defendant. | CIV. NO. 23-00056 LEK-WRP |

**ORDER: GRANTING PLAINTIFF'S APPEAL;**
**REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION;**
**AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Plaintiff Laautuilevanue Tue ("Plaintiff") filed his Complaint for Review of Social Security Disability Insurance Determination ("Complaint") on January 29, 2023, pursuant to 42 U.S.C. § 405(g).  [Dkt. no. 1.]  Plaintiff appeals from Administrative Law Judge Jesse Pease's ("ALJ") October 27, 2021 Decision ("Appeal").[1]  The ALJ issued the Decision after

_____

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated May 1, 2023 ("AR") at 12-38.  [AR, filed 5/3/23 (dkt. no. 7), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 7-3) at PageID.33-59.]  On December 28, 2021, Plaintiff requested review of the Decision.  [AR at 158-61 (dkt. no. 7-5 at PageID.181-84).]  By notice dated November 29, 2022, the Appeals Council denied Plaintiff's request for review.  [Notice of Appeals Council Action ("AC Notice"), AR at 1-6 (dkt. no. 7-3 at PageID.22-27).]  Thus, the ALJ's Decision constitutes the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner").  [Id. at 1 (dkt. no. 7-3 at PageID.22).]

conducting a telephonic hearing on September 29, 2021. [Decision, AR at 15 (dkt. no. 7-3 at PageID.36).]  The ALJ ultimately concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act.  [Id. at 34 (dkt. no. 7-3 at PageID.55).]

Plaintiff's Opening Brief was filed on June 13, 2023. [Dkt. no. 11.]  The Commissioner filed the Answering Brief on July 11, 2023, and Plaintiff filed his Reply Brief on July 27, 2023.  [Dkt. nos. 14, 15.]  Oral argument on the Appeal was heard on September 29, 2023.  For the reasons set forth below, Plaintiff's Appeal is granted and the matter is remanded to the ALJ for further proceedings consistent with this Order.

## BACKGROUND

On December 16, 2019, Plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging he was disabled as of March 28, 2019. Plaintiff's claim was denied, initially and on reconsideration. On September 2, 2020, Plaintiff filed a written request for a hearing.  Plaintiff and Linda Ferra, an impartial vocational expert ("VE"), testified at the September 29, 2021 hearing. [Decision, AR at 15 (dkt. no. 7-3 at PageID.36).]

Plaintiff testified that he has not worked at all since the date of alleged onset.  His last job was a warehouse worker for Whole Foods.  Plaintiff operated a forklift, loaded

2

trucks, made deliveries, and performed inventory and stocking duties.  The job required him to lift more than 100 pounds by himself.  See Social Security Administration Office of Disability Adjudication and Review Transcript of 9/29/21 hearing ("Hrg. Trans."), AR at 45-46 (dkt. no. 7-3 at PageID.66-67).  Plaintiff had a disagreement with his boss and was fired.  [Id. at 45 (dkt. no. 7-3 at PageID.66).]

Plaintiff served in the Army from around 2008 or 2009. He was primarily a logistics specialist, i.e. he had supply duties, but he was also an infantry gunner.  [Id. at 46-47 (dkt. no. 7-3 at PageID.67-68).]  From 2011 to 2012, he was a supply clerk for a government contractor that was doing work at the Schofield Barracks Army Base.  His duties were similar to those that he performed in the Whole Foods warehouse worker job.  See id. at 47-48 (dkt. no. 7-3 at PageID.68-69).

When asked about the physical problems that prevent him from working, Plaintiff responded that, in 2007, he had surgery on his left shoulder.  [Id. at 49 (dkt. no. 7-3 at PageID.70).]  He also has "a torn right labrum, torn right bicep, chronic cervical and lumbar, [and] a fractured wrist." [Id.]  At the time of the hearing before the ALJ, Plaintiff had surgeries scheduled to address problems with his left elbow, including carpal tunnel syndrome, as well as problems with his left knee and his ankles.  He testified that he needs the same

3

surgery on his right shoulder that he had on his left shoulder. These issues prevent Plaintiff from standing or sitting for long periods of time and from raising his arms for long periods. [Id.]

When asked about his psychological and emotional problems, Plaintiff testified that he "had flashbacks, triggers, nightmares" and "severe social and occupational impairments, anxiety and depression." [Id. at 50 (dkt. no. 7-3 at PageID.71).]  The ALJ also asked about Plaintiff's prior diagnosis of alcohol dependence, and Plaintiff responded that he could finish "a 12-pack" in one sitting, and the last time he had done so was two weeks before the hearing, but he tries to limit his drinking to two times per week.  [Id.]  When the ALJ asked about Plaintiff's memory and concentration, he testified that he has a hard time remembering things.  [Id. at 51 (dkt. no. 7-3 at PageID.72).]

When asked about his interpersonal relationships, Plaintiff stated:

> I cut my ties with my family.  I got divorced.  I
> had anger issues.  Because of my experience
> during deployment, I couldn't stand being around
> people.  And because of my behavior, the people
> that I was -- my family, none of them didn't want
> to be around me.  And I'm okay with that.

[Id. at 50 (dkt. no. 7-3 at PageID.71).]  Plaintiff has a five-year-old biological son and a stepson.  [Id. at 50-51 (dkt. no. 7-3 at PageID.71-72).]

Plaintiff testified that he frequently isolated himself, from "[b]efore the pandemic" up through the time of the hearing.  [Id. at 51 (dkt. no. 7-3 at PageID.72).]  When asked to describe what he had been doing in 2019 and 2020, Plaintiff said he had "been staying home, and pretty much angry at the world, and trying to just keep to [him]self."  [Id. at 55 (dkt. no. 7-3 at PageID.76).]  He did not want to deal with people and preferred to be by himself and "just stick to what [he] do[es]" because of "what [he] ha[d] to go through with other people[,]" including being discriminated against.  [Id.]  Plaintiff testified that he was homeless, and U.S. Vets referred him to his attorney to get help with his social security benefits.  Plaintiff would not have sought out help on his own because he has a hard time trusting people and dealing with people.  [Id. at 55-56 (dkt. no. 7-3 at PageID.76-77).]

Plaintiff also testified that he has a hard time going to the grocery store.  Although he goes when he needs something, he tries to go when the store is less crowded.  Plaintiff testified that he gets into arguments with people when he goes out in public because he feels that he is being discriminated against.  He would "rather walk away and not get involved," but

5

he is not always able to walk away.  [Id. at 52 (dkt. no. 7-3 at PageID.73).]

Plaintiff believes he is primarily disabled because of his "mental state," including his anger.  [Id.]  He "can't stand authority figures, especially [police officers]," and he also has problems with coworkers.  [Id. at 53 (dkt. no. 7-3 at PageID.74).]  When he is around other people, whether it is supervisors, coworkers, or anyone out in public, Plaintiff has a hard time concentrating on his task and gets distracted because he is always aware of what others are doing.  Plaintiff was experiencing this from before 2019, and this is why he was let go from his last job.  [Id.]  According to Plaintiff, he was let go because his boss instructed him to do something that he believed was unethical and a conflict of interest.  Plaintiff refused, and he was fired.  [Id. at 51 (dkt. no. 7-3 at PageID.72).]

The VE testified that there were three occupations that were either unskilled, light jobs or light, sedentary jobs, which existed in significant numbers in the national economy, that a hypothetical person, with the limitations that the ALJ ultimately included in Plaintiff's residual functional capacity ("RFC"), could perform.  See id. at 58-59 (dkt. no. 7-3 at PageID.79-80).  Plaintiff's counsel asked the VE whether there were any occupations that could be performed by a person who, in

6

addition to the limitations listed by the ALJ, would need at least two thirty-minute, unscheduled breaks during the day.  The VE responded that there would not be any jobs for that hypothetical individual.  [Id. at 59 (dkt. no. 7-3 at PageID.80).]  When Plaintiff's counsel posed a second hypothetical worker, as described by the ALJ but who also was going to be absent from work at least three days a month because he was unable to leave his house, the VE responded that there would not be any jobs for that person.  [Id.]  In Plaintiff's counsel's third hypothetical, the worker with the limitations described by the ALJ also would "blow up, and get in flights with coworkers or supervisors at least once a month," and the VE opined that the individual would not be employable.  [Id. at 60 (dkt. no. 7-3 at PageID.81).]  The fourth hypothetical worker had the limitations described by the ALJ and was also going to refuse to carry out a supervisor's order at least once a month, and the VE responded that the person would not be employable. [Id.]

I.   **The ALJ's Decision**

In the Decision, the ALJ found that Plaintiff was insured, for purposes of the Social Security Act, through March 31, 2021.  [Decision, AR at 17 (dkt. no. 7-3 at PageID.38).]  At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that

Plaintiff had not engaged in substantial gainful employment since March 28, 2019. [Id.]

At step two, the ALJ found that Plaintiff had the following severe impairments: "right shoulder labral and subscapularis tears with biceps tendonitis; right ulnar neuropathy; left cubital tunnel syndrome; coccygeal fracture; obesity; post traumatic stress disorder (PTSD); major depressive disorder, with anxiety; and alcohol dependence." [Id. (citing 20 CFR 404.1520(c)).] The ALJ also noted that Plaintiff had a number of other impairments that were not severe, including: "gastroesophageal reflux disease (GERD) . . . ; essential hypertension; migraine headaches; stable tinnitus; hemorrhoids . . . ; and mild obstructive sleep apnea . . . ." [Id. at 18 (dkt. no. 7-3 at PageID.39) (citations omitted).] The ALJ found that these impairments were not severe because "they were treated with routine medication or lifestyle modification recommendations, the impairments did not last, or are not expected to last for a continuous period of at least 12 months, and/or there is no indication of more than minimal limitations on the claimant's ability to perform basic work activities." [Id.]

At step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  [Id. (citing 20 CFR 404.1520(d),
404.1525, 404.1526).]

In the step four analysis, the ALJ found that
Plaintiff had the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR
> 404.1567(b), except: occasional postural
> activities; occasional stairs and ramps;
> occasional ladders, ropes, or scaffolds; frequent
> above shoulder reaching with the left arm;
> occasional above shoulder reaching with the right
> arm; frequent use of the bilateral hands; can
> perform simple and routine work; can have no
> customer service interaction with the public; can
> have occasional interaction with coworkers; and
> can adapt to infrequent and gradual workplace
> changes.

[Id. at 21 (dkt. no. 7-3 at PageID.42).]  The ALJ found that
Plaintiff's impairments could reasonably be expected to cause
the symptoms that Plaintiff described, but that Plaintiff's
testimony about the intensity, persistence, and limiting effects
of his symptoms was not consistent with the medical evidence and
other evidence in the record.  [Id. at 22 (dkt. no. 7-3 at
PageID.43).]

**A.    The ALJ's Analysis of Plaintiff's Testimony**

In addition to Plaintiff's testimony, discussed *supra*,
the ALJ noted that Plaintiff

> reported angry outbursts, severe anxiety, panic
> attacks, severe depression, daily flashbacks
> which trigger thoughts of hurting himself and
> others, lack of interest in daily activities,
> fear in crowded places, and insomnia (5E).  He
> reported he can pay attention for two minutes, he

9

> does not finish what he starts, he does not
> follow written or spoken instructions well,
> stress makes him anxious, he sometimes becomes
> violent because he cannot control his temper, and
> he does not like changing routines because they
> cause a lot of stress for him (5E).

[Id. (citing Exh. 5E).[2]]  The ALJ, however, found that
Plaintiff's testimony and statements about his inability to
interact with other people were inconsistent with his
activities, including "preparing his own meals, shopping in
stores once a week, driving, [going] out alone, and [going] to
physical therapy, a mindfulness therapy group, and psychologist
appointments, almost every day."  [Id. at 23 (dkt. no. 7-3 at
PageID.44) (citing Exh. 5E).]  The ALJ found that Plaintiff's
activities and education were inconsistent with his claim that
he had difficulty following directions, concentrating, and
completing tasks.  [Id. at 24 (dkt. no. 7-3 at PageID.45)
(noting Plaintiff "reported activities including: preparing his
own meals, paying bills, counting change, handling a savings
account, and using a checkbook (5E); and testified that he has a
Bachelor of Arts degree in Organizational Management").]  The
ALJ also noted that, "on January 27, 2020, psychiatrist Helio C.
Perez, MD opined that [Plaintiff] can do his activities of daily

---

[2] Exhibit 5E is the Function Report – Adult that Plaintiff
completed and signed on January 18, 2020 ("Plaintiff's Function
Report").  [AR at 425-32 (dkt. no. 7.9 at PageID.452-59).]

living without assistance." [Id. at 23-24 (dkt. no. 7-3 at
PageID.44-45) (citing Exh. 4F/11-17, 34-38).[3]]

    In addition, the ALJ considered the fact that
Plaintiff was seeking employment during the period of alleged
disability. [Id. at 23 (dkt. no. 7-3 at PageID.44) ("May 2019
mental health rehabilitation occupational therapist treatment
notes showed the claimant was motivated for work and was offered
a job working with adolescents in a residential setting, and
reported he likes working with youth and the elderly and was
open to front desk work." (citing Exh. 2F/33)).[4]]

    The ALJ also found that observations noted in
Plaintiff's counseling, treatment, and medical records were
inconsistent with Plaintiff's testimony and statements about his

---

[3] Exhibit 4F is the Health Information Technology ("HIT")
Medical Report from Veterans Affairs ("VA") for the period from
January 14, 2020 to February 6, 2020 ("VA 1/14/20-2/6/20 HIT
Report"). [AR at 566-603 (dkt. no. 8-1 at PageID.596-633).]
Pages 11-17 are Helio C. Perez, M.D.'s notes regarding a
January 27, 2020 "MENTAL HEALTH C & P EXAMINATION CONSULT" of
Plaintiff. See AR at 576 (dkt. no. 8-1 at PageID.606) (some
emphases omitted). Pages 34-38 are the PTSD C&P Report by
Dr. Perez, dated January 27, 2020 ("Perez 1/27/20 PTSD Report"),
which includes the Review Post Traumatic Stress Disorder (PTSD)
Disability Benefits Questionnaire. [AR at 599-603 (dkt. no. 8-1
at PageID.629-33).]

[4] Exhibit 2F is the HIT Medical Report from the VA for the
period from March 28, 2018 to January 15, 2020 ("VA 3/28/18-
1/15/20 HIT Report"). [AR at 486-561 (dkt. no. 8-1 at
PageID.516-91).] Page 33 is part of a note by Lorene Nakagawa
for a May 14, 2019 mental health consult with Plaintiff. [AR at
518 (dkt. no. 8-1 at PageID.548).]

mental health limitations.[5]  The ALJ cited numerous records from
June 2019 to June 2021.  The following are some examples.

-"In June 2019, social worker Lorri K. Gomes, LCSW noted the
    claimant was casually dressed, well groomed, appropriate,
    cooperative, engaged behavior, normal tone/volume speech,
    linear stream of thought, no paranoia/delusions, and
    adequate insight and judgment."  [Id. (citing Exh. 2F/24-
    30).]

-"January 2020 psychiatrist treatment notes showed, on exam,
    'okay' mood, oriented to person, place, day, and time,
    normal speech, linear, goal directed thought process, no
    suicidal or homicidal ideations, no paranoia, delusions, or
    ideas of reference, no dysperceptions; and adequate
    judgment and insight."  [Id. (citing Exh. 4F/9-10).]

-"January to November 2020 psychiatrist treatment notes showed,
    on exam, linear, goal directed thought process, normal and
    sustained attention and concentration, recent and remote
    memory grossly intact, adequate fund of knowledge, and fair
    judgment and insight."  [Id. at 24 (dkt. no. 7-3 at
    PageID.45) (citing Exhs. 4F/9-10; 7F/15-16; 10F/96-97,
    108).[6]]

-"February, April, May, and June 2021 psychiatrist treatment
    notes showed normal speech, linear, goal directed thought
    process, he denied active or passive suicidal and homicidal
    ideation, perceptual disturbances, paranoia or delusion, he

---

[5] The ALJ also discussed Plaintiff's testimony and
statements about his physical limitations and whether his
testimony and statements were consistent with the medical
findings.  [Decision, AR at 26-27 (dkt. no. 7-3 at PageID.47-
48).]  Because the arguments in the instant Appeal only address
Plaintiff's mental health limitations, those portions of the
Decision are not relevant to the issues presented in the Appeal.

[6] Exhibit 7F is the VA HIT Medical Report for the requested
period from June 9, 2020 to July 13, 2020 ("VA 6/9/20-7/13/20
HIT Report").  [AR at 635-59 (dkt. no. 8-1 at PageID.665-89).]
Exhibit 10F is a compilation of records from VA Pacific Islands
Health Care and Hawaii Pacific Neuroscience for the period from
September 10, 2020 to June 20, 2021 ("VAPIHC/HPN Records
9/10/20-6/20/21").  [AR at 722-875 (dkt. no. 8-3 at PageID.754-
907); AR at 876-91 (dkt. no. 8-4) at PageID.909-24).]

was oriented to person, place, time, and situation, and fair insight and judgment." [Id. at 23 (dkt. no. 7-3 at PageID.44) (citing Exh. 10F/31, 48, 55, 64, 73).]

B.   **The ALJ's Analysis of the Medical Opinions**

The ALJ found that he could not "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." [Id. at 27 (dkt. no. 7-3 at PageID.48).]

Relevant to the instant Appeal, the ALJ noted that, on June 3, 2019, social worker Lorri K. Gomes, LCSW ("Gomes") opined that Plaintiff had "serious impairment in social, occupation, or school functioning due to his mental health condition (i.e., no friends, unable to keep a job, problems with thinking or memory, homeless, and unemployed/underemployed)." [Id. at 28 (dkt. no. 5-3 at PageID.49) (citing Exh. 2F/24-30).[7]] The ALJ pointed out that Gomes was not a medical source.  [Id. (citing 20 CFR 404.1502(e)).]  The ALJ also stated Gomes's opinions were "not consistent with the longitudinal test

---

[7] Pages 24-30 of Exhibit 2F (VA 3/28/18-1/15/20 HIT Report) are Gomes's notes regarding the June 3, 2019 mental health consult with Plaintiff ("Gomes 6/3/19 Notes").  [AR at 509-15 (dkt. no. 8-1 at PageID.539-45).]  Gomes apparently also goes by the name of Lorri Cameron Bessette.  Compare Exh. 2F at 24, AR at 509 (dkt. no. 8-1 at PageID.539) (stating the author of the note is Lorri Bessette), with id. at 515 (dkt. no. 8-1 at PageID.545) (Gomes's electronic signature on the note).

results, exam findings, and other opinion evidence, including

psychiatrist Helio C. Perez's opinion that the claimant does not

have cognitive problems and can do his activities of daily

living without assistance . . . ."  [Id. (citing Exh. 4F/11-17,

34-38).[8]]

On January 27, 2020, Dr. Perez opined that Plaintiff

> is significantly impaired in getting along due to
> irritability and poorly controlled anger
> problems; [Plaintiff]'s anger problem and
> accepting authority is the main reason he has not
> been able to maintain employment in a competitive
> job environment; and [Plaintiff]'s anger, panic
> symptoms, avoidance behavior, and legal problems
> are keeping him from participating in family,
> social, and community activities; but he does not
> have cognitive problems and can do his activities
> of daily living without assistance.

[Id. (citing Exh. 4F/11-17, 34-38).]  The ALJ found that

Dr. Perez's opinions were persuasive, but only to the extent

that they were consistent with the limitations in the ALJ's RFC

finding.  The ALJ found that Dr. Perez's opinion that Plaintiff

had more extensive social limitations were not well supported.

[Id. (citing Exh. 4F/9-10; Exh. 7F/6, 13, 17-18; Exh. 10F/41,

92, 117, 119).]

---

[8] Pages 11-17 of Exhibit 4F (VA 1/14/20-2/6/20 HIT Report)
are Dr. Perez's notes regarding a January 27, 2020 "MENTAL
HEALTH C & P EXAMINATION CONSULT" with Plaintiff.  See AR at 576
(dkt. no. 8-1 at PageID.606) (some emphases omitted).  Pages 34-
38 of Exhibit 4F is the Perez 1/27/20 PTSD Report.  [AR at 599-
603 (dkt. no. 8-1 at PageID.629-33).]

The ALJ next noted that, on January 30, 2020, counselor Darlene Jones, LCMHC, CSAC ("Jones") opined that Plaintiff "is possibly 'ok' with interacting with co-workers; but is not capable of interacting with others in the work setting, noting Plaintiff hates authority figures and 'thinks people are stupid so his customer service isn't the best[.]'" [Id. (quoting Exh. 3F/4).[9]]  The ALJ also noted:

> Counselor Jones opined that the claimant would not be a good candidate for employment as his reactive anger, inability to filter his emotions, and distrust to others' motives would get in the way of working with co-workers and supervisors, and the general public (6F/2; 11F).  On September 18, 2020, Counselor Jones also submitted a checkbox form indicating: when in pain the claimant is easily irritated and angered and his volatile reactivity and heightened sense of "moral justice" wreaks havoc on his behavior; he would be absent more than three times a month due to his condition; his worry is more anti-social and anger fueled by people he thinks are stupid or act stupid; with marked limitations in working with others, completing a workweek with interruptions, accepting instructions and responding to criticism from supervisors; getting along with co-workers or peers without distracting them, responding appropriately to changes dealing with normal work stress of semiskilled and skilled work, noting he quickly

_____

[9] Exhibit 3F is the Report of Treating Mental Health Provider (Adult Form) that Jones signed on January 30, 2020 ("Jones 1/30/20 Report").  [AR at 562-65 (dkt. no. 8-1 at PageID.592-95).]  Exhibit 6F is a letter, dated July 3, 2020, by Jones describing Plaintiff's therapy and response to therapy from January 31, 2020 to the date of the letter ("Jones 7/3/20 Letter").  [AR at 633-34 (dkt. no. 8-1 at PageID.663-64).] Exhibit 11F is a Psychotherapy Report Summary, dated September 21, 2021 by Jones ("Jones 9/21/21 Report").  [AR at 892-93 (dkt. no. 8-4 at PageID.925-26).]

> gets angry, shuts down, it takes a long time for
> him to calm down; marked limitations in using
> public transportation, understanding,
> remembering, or applying information, interacting
> with others, and adapting or managing oneself;
> and extreme limitations in interacting
> appropriately with the general public, noting the
> claimant is not able to filter his reactions to
> others around him; and he is quite capable of
> functioning intellectually, but he is so reactive
> he isn't able to follow through with skills
> learned (8F).

[Id. at 29 (dkt. no. 7-3 at PageID.50).]

The ALJ found that some of Jones's opinions about
Plaintiff's limitations were persuasive because they were well
supported by her findings and consistent with other medical
evidence, specifically the "limitations to understanding,
remembering, and applying information for simple to complex
instructions; and concentrating, persisting, or maintaining pace
for simple tasks." [Id.] The ALJ also found that

> greater limitations are not well supported by
> Counselor Jones' findings that the claimant was
> well groomed, clear speech, intact cognition, and
> good memory (3F/2, 4); nor consistent with the
> other opinion evidence and longitudinal exam
> findings discussed in detail herein, including
> findings that the claimant was well groomed,
> appropriate, cooperative, engaged, normal speech,
> linear stream of thought, no paranoia/delusions,
> adequate insight and judgment (2F/24-30);
> appropriate social interactions, positive and
> normal range affect, appropriate thought content,
> no suicidal or homicidal ideation; judgment
> within normal limits; fair insight (2F/14, 16,
> 18, 20; 4F/6, 17, 27); and fully oriented, normal
> speech, linear, goal directed thought process, no
> suicidal or homicidal ideations, adequate
> judgment and insight (4F/9-10); and psychiatrist

16

Helio C. Perez's opinion that the claimant does
not have cognitive problems and can do his
activities of daily living without assistance
(4F/11-17, 34-38).

[Id.]

The ALJ found that the record did not establish that
Plaintiff had greater limitations than those that the ALJ
included in the RFC finding.  [Id. at 32 (dkt. no. 7-3 at
PageID.53).]

C.     **The ALJ's Ultimate Findings**

The ALJ found that, based on Plaintiff's RFC,
Plaintiff was incapable of performing any of his past relevant
work, through the date last insured.  [Id.]

At step five, the ALJ noted that Plaintiff was in the
"younger individual" category on the date last insured.  [Id.
(citing 20 CFR 404.1563).]  Further, Plaintiff has at least a
high school education.  [Id. at 33 (dkt. no. 7-3 at PageID.54)
(citing 20 CFR 404.1564).]  The Decision does not address
whether Plaintiff has transferable job skills because the ALJ
found that, using the Medical-Vocational Rules framework,
Plaintiff was "not disabled," irrespective of the transferable
skills issue.  [Id. (citing SSR 82-41; 20 CFR Part 404, Subpart
P, Appendix 2).]  The ALJ found that, based on Plaintiff's age,
education, work experience, and RFC, Plaintiff could make a
successful adjustment to the following jobs that exist in

significant numbers in the national economy: photocopy machine operator, housekeeping cleaner, and marker.  [Id. at 33-34 (dkt. no. 7-3 at PageID.54-55).]  The ALJ therefore found that Plaintiff was not under a disability from the alleged onset date, March 28, 2019, to the date last insured, March 31, 2021. [Id. at 34 (dkt. no. 7-3 at PageID.55) (citing 20 CFR 404.1520(g)).]

### D.   Appeals Council Review

Plaintiff requested review of the ALJ's decision. [Exh. 12B, AR at 158-61 (dkt. no. 7-5 at PageID.181-84).]  As previously noted, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the Commissioner's final decision.  [AC Notice, AR at 1 (dkt. no. 7-3 at PageID.22).]

## II.   The Instant Appeal

Plaintiff argues this Court should reverse the Decision because: the ALJ improperly rejected Plaintiff's testimony; and the ALJ improperly rejected the medical opinions of Gomes, Dr. Perez, and Jones.  Plaintiff argues these errors were not harmless, and he asks this Court to reverse the ALJ's Decision and remand the case for a new hearing.  [Opening Brief at 1.]

### STANDARDS

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of

Social Security." <u>Concannon v. Saul</u>, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), *aff'd*, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

## I.   <u>Review of Social Security Decisions</u>

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." <u>Id.</u>

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. <u>Id.</u> "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hill v. Astrue</u>, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. <u>Id.</u> Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision. <u>Attmore v. Colvin</u>, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court

19

does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  Five-Step Analysis

The following analysis applies in cases involving review of the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation.  See 20 C.F.R. § 404.1520.  The burden of proof is on the claimant at steps one through four.  See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).  At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571–404.1572, 416.971–416.975).  At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).
>
> At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings").  See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A).  The listings describe impairments that are considered "to be severe

enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (footnote omitted).[10] If an impairment does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, § 404.1520(e), which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it," § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. § 404.1520(f).

---

[10] Sullivan has been superseded by statute on other grounds. See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013).

      At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." Thomas v. Barnhart, 278 F.3d 947, 955
(9th Cir. 2002).  To meet this burden, the ALJ
may rely on the Medical-Vocational Guidelines
found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or
on the testimony of a vocational expert.  Tackett
v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).
"[A] vocational expert or specialist may offer
expert opinion testimony in response to a
hypothetical question about whether a person with
the physical and mental limitations imposed by
the claimant's medical impairment(s) can meet the
demands of the claimant's previous work, either
as the claimant actually performed it or as
generally performed in the national economy."
§ 404.1560(b)(2).  An ALJ may also use "other
resources, such as the 'Dictionary of
Occupational Titles' and its companion volumes
and supplements, published by the Department of
Labor." Id.

      Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." Andrews v. Shalala, 53
F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

**DISCUSSION**

I.   **Failure to Consider Medical Opinions**

      This Court turns first to Plaintiff's argument that

the ALJ failed to give proper consideration to the medical

opinions of Gomes, Dr. Perez, and Jones.  20 C.F.R. § 404.1520c,

which governs claims filed on or after March 27, 2017, states

the Social Security Administration

22

> will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinion(s) or prior administrative
> medical finding(s), including those from your
> medical sources.  When a medical source provides
> one or more medical opinions or prior
> administrative medical findings, we will consider
> those medical opinions or prior administrative
> medical findings from that medical source
> together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as
> appropriate.  The most important factors we
> consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of
> this section) and consistency (paragraph (c)(2)
> of this section)).

20 C.F.R. § 404.1520c(a).

As to supportability, § 404.1520c(c)(1) states: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions.  As to consistency, § 404.1520c(c)(2) states: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." . . will be."

**A.   Gomes**

Plaintiff argues the ALJ improperly discounted Gomes's opinions because the ALJ believed Gomes was not a medical source.  See Decision, AR at 28 (dkt. no. 7-3 at PageID.49) (citing 20 CFR 404.1502(e)).  Gomes is a licensed clinical

social worker, and she performed a mental health consult on June 3, 2019.  See Exh. 2F (VA 3/28/18-1/15/20 HIT Report) at 24 & 30, AR at 509 & 515 (dkt. no. 8-1 at PageID.539 & PageID.545). 20 C.F.R. § 404.1502(d) states a medical source includes "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law . . . ."  Licensed clinical social workers are among such healthcare workers.  See Victor L.F. v. Berryhill, Case No. 2:17-cv-01806-JLR-TLF, 2018 WL 6729692, at *3 n.2 (W.D. Wash. Dec. 3, 2018) (some citations omitted) (citing 20 C.F.R. 404.1502(d));[11] see also Haw. Rev. Stat. § 467E-7(3) (listing the requirements to be a licensed clinical social worker in Hawai`i).  Thus, the ALJ erred in finding that Gomes was a nonmedical source.

        The Commissioner conceded as much during the argument on the Appeal, but the Commissioner argues the ALJ's error was harmless because, although the ALJ referred to Gomes as a nonmedical source, the ALJ did consider Gomes's opinions using the required analysis for medical opinion.  See Answering Brief at 4-5.  The ALJ noted that Gomes "checked boxes indicating a 'serious impairment in social, occupation, or school functioning

_____

        [11] Victor L.F., 2018 WL 6729692 was the magistrate judge's report and recommendation, which was subsequently adopted by the district judge.  2018 WL 6724939 (Dec. 21, 2018).

due to his mental health condition (i.e., no friends, unable to keep a job, problems with thinking or memory, homeless, and unemployed/underemployed)." [Decision, AR at 28 (dkt. no. 7-3 at PageID.49) (citation omitted).] However, this does not constitute a supportability analysis of Gomes's opinions because the mere fact that a medical source states an opinion by checking a box does not automatically mean the opinion is unsupported. Cf. Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (noting that the ALJ erred by ("fail[ing] to recognize that the opinions expressed in check-box form in the February 2008 [Pain Functional Capacity] Questionnaire were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). This Court therefore finds that the ALJ failed to assess the supportability of Gomes's analysis because the ALJ considered Gomes a nonmedical source. Cf. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").

**B.  Dr. Perez**

The ALJ found some of Dr. Perez's opinions about limitations on Plaintiff's social interactions to be well supported and consistent with exam findings in the record, but

the ALJ also found that Dr. Perez's opinions about more
extensive limitations were "not well supported by Dr. Perez's
findings of: 'okay' mood, normal speech, linear, goal directed
thought process, no paranoia, delusions, or ideas of reference,
no dysperceptions, adequate judgment and insight."  [Decision,
AR at 28 (dkt. no. 7-3 at PageID.49) (citing Exh. 4F/9-10).]
However, pages 9 and 10 of Exhibit 4F are part of a January 27,
2020 Mental Health Physician Note that was not written by Dr.
Perez, but by Psychiatry Resident Victor Huynh, D.O., and co-
signed by Psychiatrist George Mercado.  See Exh. 4F at 6-11, AR
at 571-76 (dkt. no. 8-1 at PageID.601-06).

     At the oral argument on the Appeal, the Commissioner
acknowledged that this was an error, but the Commissioner argued
it was a minor mistake that did not affect the ALJ's analysis of
Dr. Perez's opinions.  The Commissioner emphasized that the ALJ
expressly considered Dr. Perez's opinions, found some of them to
be persuasive, and gave reasons why other portions of
Dr. Perez's opinions were not persuasive.  The Commissioner
argued that, even if another fact-finder may have analyzed
Dr. Perez's opinions differently, that is not the standard of
review that this Court must apply to the ALJ's analysis of
Dr. Perez's opinions.

     The Commissioner's argument is misplaced.  Plaintiff's
argument does not rely on an assertion that another reasonable

26

fact-finder would have analyzed Dr. Perez's opinions
differently.  Rather, Plaintiff argues it would be speculation
for this Court to assume that the ALJ would have reached the
same conclusions about the persuasiveness of Dr. Perez's
opinions if the ALJ had not attributed Drs. Huynh's and
Mercado's opinions to Dr. Perez.  See Bray v. Comm'r of Soc.
Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-
standing principles of administrative law require us to review
the ALJ's decision based on the reasoning and factual findings
offered by the ALJ—not *post hoc* rationalizations that attempt to
intuit what the adjudicator may have been thinking." (some
citations omitted) (citing SEC v. Chenery Corp., 332 U.S. 194,
196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) ("[I]n dealing with a
determination or judgment which an administrative agency alone
is authorized to make, [courts] must judge the propriety of such
action solely by the grounds invoked by the agency.  If those
grounds are inadequate or improper, the court is powerless to
affirm the administrative action by substituting what it
considers to be a more adequate or proper basis."))).  This
Court agrees with Plaintiff.

        Unlike Drs. Huynh and Mercado, who described Plaintiff
as having an "'okay'" mood and "normal rate, flow, volume and
clarity" of speech, Dr. Perez noted that Plaintiff's "mood is
very sad and depressed," Plaintiff "appeared to be very nervous

and tense throughout the interview situation," and Plaintiff "spoke slowly and in monotone." Compare Exh. 4F at 9, AR at 574 (dkt. no. 8-1 at PageID.604), with id. at 35, AR at 600 (dkt. no. 8-1 at PageID.630).[12]  While Drs. Huynh and Mercado noted that Plaintiff did not have suicidal ideations, homicidal ideations, paranoia, delusions, nor "ideas of reference," and that Plaintiff had adequate judgment and insight, Dr. Perez noted that Plaintiff had suicidal ideation, impaired judgment, and impaired impulse control.  Compare Exh. 4F at 9-10, AR at 574-75 (dkt. no. 8-1 at PageID.604-05), with id. at 37, AR at 602 (dkt. no. 8-1 at PageID.632).  These differences between Drs. Huynh's and Mercado's observations and Dr. Perez's observations are significant.  Therefore, the ALJ's rejection of some of Dr. Perez's opinions - which was based, at least in part, on the erroneous attribution of Drs. Huynh's and Mercado's January 27, 2020 note to Dr. Perez - is not supported by substantial evidence.

C.   **Jones**

The ALJ found persuasive Jones's opinions that: Plaintiff is able to understand, remember, and apply information for simple, detailed, and complex instructions; and he is only able to concentrate, persist, and maintain pace for simple

---

[12] AR at 600 is part of the Perez 1/27/20 PTSD Report.  See Exh. 4F at 34-38, AR at 599-603 (dkt. no. 8-1 at PageID.629-33).

tasks.  See Decision, AR at 29 (dkt. no. 7-3 at PageID.50); see also Exh. 3F (Jones 1/30/20 Report) at 3, AR at 564 (dkt. no. 8-1 at PageID.594).  However, the ALJ found unpersuasive Jones's opinions regarding greater limitations because they were "not well supported by Counselor Jones' findings that the claimant was well groomed, clear speech, intact cognition, and good memory."  [Decision AR at 29 (dkt. no. 7-3 at PageID.50) (citing Exh. 3F at 2, 4).]

          The ALJ did not specifically address Jones's abnormal findings in the Jones 1/30/20 Report.  For example, the ALJ noted that Jones said Plaintiff was well groomed, but Jones also noted that Plaintiff's attitude was "hostile and agitated, suspicious, [and] distrustful."  [Exh. 3F at 2, AR at 563 (dkt. no. 8-1 at PageID.593).]  Further, although Jones noted that Plaintiff's speech was clear, Jones's notes about Plaintiff's behavior stated Plaintiff "tries to control anger but represses it - boils over - and he rants," and Jones's notes about Plaintiff's mood state he was "quick to anger."  [Id.]  Although Plaintiff's suicidal ideation was "low" at the time of the Jones 1/30/20 Report, Jones noted that he had "12+ attempts - different plans - feels hopeless."  [Id.]  The abnormal findings that Jones noted on January 30, 2020 support Jones's opinions that Plaintiff "would not be a good candidate for employment at this time as his reactive anger, inability to filter his

29

emotions, and distrust to others' motives would get in the way
of working with co-workers, supervisors.  And the general
public."  See Exh. 6F (Jones 7/3/20 Letter), AR at 634 (dkt.
no. 8-1 at PageID. 664); see also Exh 3F (Jones 1/30/20 Report)
at 3, AR at 564 (dkt. no. 8-1 at PageID.594) (opining that
Plaintiff is not capable of interacting with supervisors and the
general public in a work setting because "he hates authority due
to his mistreatment by NCO's," "[h]e thinks people are stupid so
his customer service isn't the best" and he is "possibly ok" to
interact with coworkers).  Further, the ALJ did not explain how
the fact that Plaintiff was well-groomed, spoke clearly, and
showed adequate memory and cognition at his sessions with Jones
detracted from her observation of his hostility and
suspiciousness toward others.  This Court therefore concludes
that the ALJ erred in the supportability analysis of Jones's
opinions.

Further, in the consistency analysis, the ALJ found
that Jones's opinions about Plaintiff's more extensive
limitations were inconsistent with Dr. Perez's "opinion that the
claimant does not have cognitive problems and can do his
activities of daily living ['ADLs'] without assistance."
[Decision, AR at 29 (dkt. no. 7-3 at PageID.50) (citing

Exh. 4F/11-17, 34-38).[13]]   However, although Dr. Perez did opine

that Plaintiff "does not have cognitive problems" and "can do

his ADLs without assistance[,]" Dr. Perez also stated:

> 4: Getting along: This is an area of **significant
> impairment** due to irritability and poorly
> controlled anger problems.
>
> 5: Life activities/ Work: Again, [Plaintiff's]
> anger problem and accepting authority is the main
> reason he has not been able to maintain
> employment in a competitive job environment.
>
> 6: Participation in Society/Legal: [Plaintiff's]
> anger, panic symptoms, avoidance behavior and
> legal problems are keeping keep him from
> participating in family, social and community
> activities.

[Exh 4F at 16, AR at 581 (dkt. no. 8-1 at PageID.611) (emphasis

added).]   Dr. Perez's abnormal findings are consistent with

Jones's abnormal findings, and the ALJ again failed to explain

how the lack of cognitive problems and Plaintiff's ability to

perform his ADLs outweighed the abnormal findings made by Jones

and Dr. Perez.

The ALJ also compared Jones's findings and opinions

with those of Drs. Huynh and Mercado.  See Decision, AR at 29

(dkt. no. 7-3 at PageID.50) (citing 4F/9-10).  Pages 9 and 10 of

Exhibit 4F are part of the Mental Health Physician Note by

Drs. Huynh and Mercado that the ALJ erroneously attributed to

---

[13] Exhibit 4F, pages 11-17 and Exhibit 4F, pages 34-38 are
the Perez 1/27/20 PTSD Report.  [AR at 576-82, 599-603 (dkt.
no. 8-1 at PageID.606-12, PageID.629-33).]

Dr. Perez.  See supra Discussion § I.B.  Drs. Huynh and Mercado
did note that, on examination, Plaintiff had no suicidal
ideations or homicidal ideations, [Exh. 4F at 9, AR at 574 (dkt.
no. 8-1 at PageID.604),] but they also explained that Plaintiff
"**currently** denies any suicidal or homicidal thoughts, however
[he] **continues to report occasional thoughts,**" [id. at 8, AR at
573 (dkt. no. 8-1 at PageID.6-3) (emphases added, other emphases
omitted)].  Thus, although Plaintiff may not have had suicidal
or homicidal thoughts during that examination, he was continuing
to experience such thoughts periodically.  This was consistent
with Jones's finding of low suicidal ideations but multiple
prior attempts.  See Exh. 3F (Jones 1/30/20 Report) at 2, AR at
563 (dkt. no. 8-1 at PageID.593).

      The ALJ also found that Jones's findings and opinions
regarding Plaintiff's more extensive limitations were not
consistent with "other opinion evidence and longitudinal exam
findings discussed in detail herein, including findings that the
claimant was well groomed, appropriate, cooperative, engaged,
normal speech, linear stream of thought, no paranoia/delusions,
adequate insight and judgment." [Decision, AR at 29 (dkt.
no. 7-3 at PageID.50 (citing 2F/24-30).]  Pages 24-30 of
Exhibit 2F are the Gomes 6/3/19 Notes, [AR at 509-15 (dkt.
no. 8-1 at PageID.539-45),] and in addition to the findings
noted by the ALJ, Gomes noted that Plaintiff had current

suicidal ideations, and that a safety plan was created with a doctor on April 22, 2019, which was less than two months before Gomes's assessment.  See Exh. 2F at 25-26, AR at 510-11 (dkt. no. 8-1 at PageID.540-41).  She also noted Plaintiff's history of "several incidents of physical violence against others, due to 'harassment' and 'bullying'."  [Id. at 25, AR at 510 (dkt. no. 8-1 at PageID.540).]  The ALJ did not set forth any reasons why the fact that Plaintiff was well-groomed and cooperative during his assessment with Gomes negated Gomes's observations of Plaintiff's suicidal thoughts and his reported history of violence towards others.  These portions of the Gomes 6/13/19 Notes are consistent with Jones's abnormal findings and Jones's opinions regarding Plaintiff problems interacting with others.

As previously discussed, the ALJ failed to give proper consideration to Gomes's opinions because the ALJ erroneously found her to be a nonmedical source.  See supra Discussion § I.A.  The fact that the ALJ considered Gomes to be a nonmedical source appears to have affected the portions of Gomes's findings and opinions the ALJ considered when comparing Jones's findings and opinions to Gomes's because the ALJ focused upon Gomes's observations of physical appearance and behavior while ignoring Gomes's notes about Plaintiff's suicidal thoughts and Plaintiff's prior violence towards others.

In light of the foregoing problems regarding the ALJ's analysis of whether Jones's findings and opinions were consistent with those made by Dr. Perez, Dr. Huynh, Dr. Mercado, and Gomes, this Court concludes that the ALJ erred in the consistency analysis of Jones's opinions.

## II.  <u>Whether It Was Error to Discount Plaintiff's Testimony</u>

The ALJ noted that Plaintiff testified that "it is hard for him to trust people, and it is hard for him to deal with people.  He also reported angry outbursts, severe anxiety, panic attacks, severe depression, daily flashbacks which trigger thoughts of hurting himself and others."  [Decision, AR at 22 (dkt. no. 7-3 at PageID.43).]  However, the ALJ found that this testimony about Plaintiff's difficulty interacting with others, especially authority figures, was inconsistent with the medical findings and opinions, including those made by Gomes and Dr. Perez, as well as the note which the ALJ erroneously attributed to Dr. Perez.  [<u>Id.</u> at 23-24 (dkt. no. 7-3 at PageID.44-45).]

The Ninth Circuit has stated:

> To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying which testimony the ALJ found not credible and

> explaining which evidence contradicted that
> testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)

(brackets, citation, and internal quotation marks omitted).

Further, those reasons must be supported by substantial

evidence.  Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir.

2015).

The ALJ found that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged

symptoms[,]" [Decision, AR at 22 (dkt. no. 7-3 at PageID.43),]

and the Decision does not contain a finding that Plaintiff is

malingering.  The ALJ was therefore required to give specific,

clear, and convincing reasons, supported by substantial

evidence, for rejecting Plaintiff's testimony about the extent

and limiting effects of his symptoms.  The ALJ did give specific

and clear reasons in this case, but a significant portion of the

ALJ's analysis of Plaintiff's testimony is based upon the

medical opinions that were the subject of the errors discussed

*supra* Discussion § I.  In light of those errors, this Court

cannot conclude that the ALJ's reasons for rejecting Plaintiff's

testimony were convincing and supported by substantial evidence.

This Court therefore concludes that the ALJ erred in rejecting

Plaintiff's testimony about the extent and limiting effects of

his symptoms.

III. **Whether the Errors Were Harmless**

This Court has concluded that the ALJ erred in the analysis of Gomes's, Dr. Perez's, and Jones's medical opinions and in the rejection of Plaintiff's subjective symptom testimony.  During the hearing before the ALJ, the VE opined that a hypothetical person, with the limitations that the ALJ ultimately included in the RFC, who was "going to blow up, and get in fights with coworkers or supervisors at least once a month," would not be employable.  [Hrg. Trans., AR at 60 (dkt. no. 7-3 at PageID.81).]  In addition, if the hypothetical person was "going to refuse to carry out orders from the supervisor . . . at least once per month," the person would not be employable.  [Id.]  Thus, if the ALJ properly considered the findings and opinions by Gomes, Dr. Perez, and Jones and properly considered Plaintiff's subjective symptom testimony, the ALJ may have ultimately concluded that Plaintiff was disabled.

This Court therefore finds that that the ALJ's errors were not harmless.[14]  See Treichler, 775 F.3d at 1099 ("An error

---

[14] While the errors of mischaracterizing Gomes as a nonmedical source and attributing the note by Drs. Huynh and Mercado to Dr. Perez may arguably have been harmless, when considered individually, the cumulative effect of those errors, together with the errors in the analysis of Jones's findings and opinions, precludes a finding of harmless error.  Moreover, the erroneous analysis of the medical opinions was part of the basis
                                        (. . . continued)

is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting <u>Alaska Dep't of Envtl. Conserv. v. EPA</u>, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))).

In light of this Court's rulings, the ALJ's ultimate ruling that Plaintiff was not disabled was not supported by substantial evidence.  To the extent that Plaintiff's Appeal raises arguments which are not specifically addressed in this Order, it is not necessary for this Court to reach those arguments.  This Court makes no findings or conclusions regarding those arguments.  Plaintiff's Appeal is granted insofar as the ALJ's Decision, including the ruling that Plaintiff is not disabled, is reversed.  The case is remanded to the ALJ for further proceedings consistent with this Order.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Plaintiff's appeal from the Administrative Law Judge's September 29, 2021 Decision is HEREBY GRANTED IN PART AND DENIED IN PART.  The Appeal is GRANTED, and this case is REMANDED to the ALJ for further proceedings consistent with the instant Order.  There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to

---

for the ALJ's rejection of Plaintiff's subjective symptom testimony, resulting in further error.  This is particularly so because they type of symptoms at issue in Plaintiff's Appeal are not susceptible to objective measurement through medical tests.

enter judgment and close on **December 27, 2023,** unless a timely motion for reconsideration of the instant Order is filed.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, December 11, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LAAUTUILEVANU P. TUE VS. KILOLO KIJAKAZI, ETC; CV 23-00056 LEK-WRP; ORDER:  GRANTING PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**